UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:06-CV-89-M

RICHARD CANSLER and
SYLVIA CANSLER                                                                                    PLAINTIFFS

V.

CITY OF HENDERSON, et al.                                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross-motions for summary judgment by Plaintiffs Richard and Sylvia Cansler [DN 54] and Defendants City of Henderson, Henderson Police Department ("HPD"), former Chief Ed Brady, Officer Eddie Knight, and Officer Bradley Newman [DN 56]. Fully briefed, this matter is ripe for consideration. For the following reasons, the Defendants' motion for summary judgment is **GRANTED** and the Plaintiffs' motion for summary judgment is **DENIED**.

**I. FACTS**

During the Winter of 2005-2006, Richard Cansler was under surveillance by the Drug Enforcement Administration ("DEA"). (Verified Complaint, U.S. v. $9,173 U.S. Currency, et al., S.D. Ind., Evansville Div., No. 3:06-cv-0125-RLY-WGH ("Verified Forfeiture Complaint")). The DEA's surveillance revealed that in mid-January 2006 Cansler provided methamphetamine to Evansville resident Demarko Kemp "on a 'front,'" whereby Kemp would pay for the drugs at a later time. Id. According to the DEA, that later time was the

weekend of January 21, 2006, when "Cansler arranged by telephone a meeting with Kemp in Evansville" in order to "pick up [the] money . . . owed." Id.

On Sunday, January 22, 2006, DEA Special Agent Robert A. Langan surveilled Cansler as he visited Demarko Kemp at Southside Auto Sales in Evansville, Indiana. Id. As a result of this surveillance, the DEA advised the HPD that Cansler had an active warrant for driving on a suspended driver's license; that he was driving a maroon Cadillac Escalade; and that he would be returning to Henderson with a large amount of drug-related money. (Knight Depo., p. 16). The DEA asked the Henderson Police to initiate a traffic stop and seize the money. (Knight Depo., p. 24). Lt. Frank Cates, who was working as HPD shift commander that day, confirmed that there was an active arrest warrant for Cansler and that his driver's license was suspended. Id. at 16. On Lt. Cates's instruction, HPD patrolman Eddie Knight pulled Richard Cansler over soon after he crossed the Ohio River. (Knight Depo., p. 12). Officer Bradley Newman acted as backup. Id.

When asked to show his driver's license, Mr. Cansler said he had left it at home. Id. at 19. Officer Knight confirmed, however, that Cansler's driver's license was suspended, and arrested him pursuant to the outstanding warrant. Id. at 18-21. Following usual arrest protocol, Knight searched Cansler and found a large amount of cash, in several small bundles totaling $9,173, in his pants pockets. Id. at 23. Richard Cansler said that he received the cash from an insurance claim, from some rental property he owned, and from his construction company. (Knight Depo., p. 28; Richard Cansler Depo., p. 75-77). Acting on the DEA's information that the cash was related to controlled substances, and its request to seize it, the

2

HPD confiscated the cash. (Knight Depo., p. 24, 53-57; Cates Depo., p. 13).

The Escalade that Richard Cansler was driving at the time of the arrest was titled in the name of his mother, Sylvia Cansler. (Knight Depo., p. 18). During the arrest, the Escalade was parked at a Jumpin' Jack's Convenience Store. (Knight Depo., p. 18). Cansler wanted his passenger, Kevin Banks, to drive the Escalade home, but was told that since neither of them owned the vehicle, it would be impounded. (Richard Cansler Depo., p. 27-28). Officer Knight testified that he had the car towed because Banks had only a learners' permit and was not qualified to drive the vehicle by himself. (Knight Depo., p. 27). Although the Escalade was towed to an impound lot, it was available for Sylvia Cansler to pick up at any time. (Knight Depo., p. 29-30) Because she was unable to locate the lot that evening, however, she ultimately picked up the Escalade after work the next day. (Sylvia Cansler Depo., p. 15; Richard Cansler Depo., p. 32; Jada Cansler Depo., p. 8).

On Tuesday, January 24, 2006, the day the HPD's K-9 officer returned to work, the $9,173 taken from Richard Cansler was examined by a certified drug detection dog, which confirmed the presence of a controlled substance on the currency. (Verified Forfeiture Complaint, ¶ 11; Cates Depo., p. 47). The DEA seized the money from HPD the same day. (Knight Depo., p. 32). On June 23, 2006, Richard Cansler filed this lawsuit, alleging that the City of Henderson, the HPD, its Chief and various police officers violated his civil rights by seizing the $9,173.31. [DN1]. According to Cansler, the HPD's seizure of the currency violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Sections One and Ten of the Kentucky Constitution. He also advances state law claims of trespass,

3

conversion, defamation, and false light.

In July 2006, shortly after this lawsuit was filed, Cansler's wife, Jada, was using the Escalade due to trouble with her car, when a U.S. Marshal visited her at her office at the Henderson County Board of Education and informed her that he was seizing the Escalade. (Jada Cansler Depo., p. 10-14). After helping her remove her possessions from the vehicle, the Marshal drove it away. Id. Sylvia Cansler was notified of the seizure by mail a few days later. (Sylvia Cansler Depo., p. 37). Around the same time, the United States filed its Complaint for Forfeiture In Rem in the Southern District of Indiana, seeking forfeiture of both the Escalade and the $9,173. (Verified Forfeiture Complaint). Sylvia and Richard Cansler participated in the forfeiture action, filing claims to the Escalade and the currency, respectively. See Civil Docket for Case No. 3:06-cv-00125-RLY-WGH. In August 2007, Sylvia Cansler joined this lawsuit, citing the "re-seizure" of the Escalade, although the causes of action remained the same. [DN18]

In December 2007, Richard Cansler was indicted, along with 27 others, as a result of a federal drug investigation in U.S. v. Martinez-Palermo, et al. (App. G). He has been charged with several counts of possession with intent to distribute methamphetamine, and is currently in jail awaiting trial, which is scheduled for November 2008. See Criminal docket sheet for Case No. 3:07-cr-0042-RLY-WGH-9. The United States is now pursuing forfeiture of the Escalade and the $9,173 in the criminal action. (App. I). The Order of Dismissal of the original forfeiture action indicates that if Richard Cansler is acquitted of the charges in the criminal indictment, the property will be returned to the Canslers but that, if

4

he is convicted, Mrs. Cansler will have the opportunity to pursue her claims regarding the Escalade in that action. Id.

## II. JURISDICTION

The Court has subject matter jurisdiction under 42 U.S.C.A. § 1983, including supplemental jurisdiction to address state law claims related to the federal claims. Id.; 28 U.S.C.A. § 1367.

## III. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, however, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Although the Court reviews the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than show there is some "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which

5

the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## IV. ANALYSIS

The Court is asked to consider whether Defendants violated Plaintiffs' rights when Henderson Police arrested and searched Richard Cansler, confiscated (and transferred to federal authorities) a large sum of money found on Cansler's person, and briefly impounded the vehicle Cansler was driving at the time of his arrest rather than leave it with Cansler's passenger. Plaintiffs have brought their claims under 42 U.S.C.A. § 1983, contending that the HPD's actions infringed on their rights under the Fourth and Fourteenth Amendments, Kentucky Constitution, and the common law doctrines of trespass, conversion, false light, and defamation. The Court considers these claims in turn.

A. Plaintiffs' U.S. Constitutional Claims under 42 U.S.C.A. § 1983.

Plaintiffs seek redress under 42 U.S.C.A. § 1983 for alleged violations of the Fourth and Fourteenth Amendments to the U.S. Constitution, naming the City of Henderson, the Henderson Police Department, Police Chief Brady, and Officers Knight and Newman, in their official and individual capacities. The Court quickly disposes of two of these claims. First, Plaintiffs' § 1983 claim against the HPD fails as a matter of law because police departments are not entities subject to suit. See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). Second, Plaintiffs' official capacity claim against the HPD officers is redundant with their City of Henderson claim and is therefore dismissed. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (a suit against a state official in his official capacity is no different than a suit against the official's office); Raley v. Osborne, 2007 WL 3342515,

*2 (W.D. Ky. 2007) (same). The Plaintiffs' remaining § 1983 claims against the City of Henderson and the HPD officers in their individual capacity are discussed below.

   1. City of Henderson

To succeed in a § 1983 action against a governmental entiry, a plaintiff must show a "direct causal link" between the entity's "policy or custom and the alleged constitutional deprivation." Raley, 2007 WL 3342515, at *2 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Deaton v. Montgomery County, 989 F.2d 885, 889 (6th Cir. 1993)). Here, Plaintiffs have failed to carry that burden. They have not shown or even alleged the existence of a governmental policy or custom causing a constitutional deprivation. Therefore, Plaintiffs' § 1983 claim against the City of Henderson is dismissed.

   2. Individual Capacity

To succeed on their individual capacity claims, Plaintiffs must show that each of the defendants personally condoned, encouraged or participated in conduct that violated their rights. Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted); see also, Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984). Accordingly, the Court considers whether Plaintiffs' Fourth Amendment, due process, and equal protection claims support such liability.

   (a) Fourth Amendment

Richard Cansler contends that Defendants violated his Fourth Amendment rights because a "mere traffic stop of the wrongdoer, without more, does not justify a search of . . . the person." (Plaintiffs' Memo., p. 21). Although Plaintiff correctly quotes the law, he

7

grossly misapplies it to the facts of the case. Here, it is undisputed that Cansler was stopped and arrested pursuant to a valid warrant, and that the search of his person was properly conducted incident to that arrest. (App. B; Knight Depo., p. 16, 21, 23; Richard Cansler Depo., p. 44-45) Consequently, any false arrest or illegal search argument that may be gleaned from Plaintiffs' pleadings or memoranda is unsupported by the record and must fail as a matter of law. See Bell v. Hall, 2007 WL 4215572, *2 (W.D. Ky. 2007) ("[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest made pursuant to 42 U.S.C. § 1983.") (quoting Voyticky v. Timberlake, 412 F.3d 669, 677 (6th Cir. 2005)); see also Chimel v. California, 395 U.S. 752, 762-63 (1969); U.S. v. Strahan, 984 F.2d 155, 159 (6th Cir.1993). The only colorable Fourth Amendment claim apparent in Plaintiffs pleadings is one for illegal seizure, which the Court rejects for reasons detailed below.

(i) HPD's seizure of $9,173 in cash

Richard Cansler presents two arguments for why the HPD's seizure of the $9,173 found on his person during his arrest on January 22, 2006, was unlawful under the Fourth Amendment. First, he contends that the Defendants failed to carry their "preponderance of [the] evidence" burden of proof. (Plaintiffs' Memo., p. 18-19, 21). Second, he claims that Defendants "failed to show a 'substantial connection' between the property seized and illegal conduct" and thus seized the money unlawfully. (Plaintiffs' Memo., p. 21-24). Neither of Cansler's arguments, however, are relevant here. The standards cited by Plaintiff apply to the government's burden of proof in forfeiture proceedings under the Civil Asset Forfeiture

Reform Act and U.S.C. § 881. This is not such a case. Defendants have not initiated a forfeiture proceeding, nor are they parties to the (now criminal) forfeiture proceeding against the $9,173 taking place in the Southern District of Indiana.

Defendants role in all of this is limited to the intitial seizure of the $9,173 pursuant to the DEA's request and statement that the money was proceeds of illegal drug sales. Accordingly, the proper standard for evaluating the constitutionality of the Defendants' conduct is the Fourth Amendment, not the federal forfeiture statutes. In this context, the Fourth Amendment requires the officers to have had probable cause: "a reasonable ground for belief that the item seized is contraband or evidence of a crime." See United States v. Place, 462 U.S. 696, 701 (1983); U.S. v. Baro, 15 F.3d 563 (6th Cir. 1994); $53,082.00, 985 F.2d at 249. However, in determining whether probable cause existed, courts must evaluate the collective information of all the officers, including cooperating federal and local authorities. Srisavath v. City of Brentwood, 243 Fed. Appx. 909 (6th Cir. 2007); Feathers v. Aey, 319 F.3d 843 (6th Cir. 2003); United States v. Burton, 288 F.3d 91 (3d Cir. 2002); United States v. Celio, 945 F.2d 180 (7th Cir. 1991). Although this rule generally arises in the context of arrests, see e.g., United States v. Valencia, 913 F.2d 378 (7th Cir.1990) (state officers' arrest of suspect based on DEA agent's probable cause suffices for fourth amendment inquiry), the Court finds it no less applicable to the seizure of currency here.

In this case, the Court concludes that the seizure was supported by probable cause. The DEA's surveillance revealed that Richard Cansler provided methamphetamine to Demarko Kemp "on a 'front,'" whereby Kemp would pay for the drugs at a later time. Id.

9

That later time, according to the DEA, was the weekend of January 21, 2006, when "Cansler arranged by telephone a meeting with Kemp in Evansville [in order to] pick up [the] money . . . owed." (Verified Forfeiture Complaint). The DEA therefore followed Cansler when he visited Demarko Kemp at Southside Auto Sales in Evansville, Indiana, that Sunday, and had a reasonable basis for believing that Cansler would be returning to Henderson with a large cash payment for the earlier drug sale. Id. Therefore, the "collective information" of the law enforcement agencies in this case was such that the HPD had probable cause to seize the $9,173.

      (ii) The 2002 Cadillac Escalade

Plaintiffs also contest the seizure of the 2002 Cadillac Escalade. Practically speaking, what the Canslers object to is the seizure of the Escalade by U.S. Marshals months after the January 2006 events. Plaintiffs, however, have failed to provide any evidence that Defendants were involved in, let alone responsible for, any unconstitutionality in that later seizure. Richard Cansler testified that he was "not for sure" whether the HPD had anything to do with the July seizure. (Richard Cansler Depo., p. 34). Sylvia Cansler testified that she "was thinking that" HPD had the Escalade because it "was picked up by . . . [them] that first time." (Sylvia Cansler Depo., p. 58). And Jada Cansler, who was present at the time of the seizure, testified that no one from HPD was there when a U.S. Marshal came to her workplace to get the Escalade. (Jada Cansler Depo., p. 21-22). As a result, any constitutional abridgment by Defendants can only have occurred when the HPD temporarily impounded the Escalade during Richard Cansler's arrest on January 22, 2006.

In the Sixth Circuit, as in every federal circuit, police may impound vehicles that are interfering with traffic or parked illegally pursuant to their community caretaking function without violating the Fourth Amendment. See, e.g., U.S. v. Harvey, 16 F.3d 109 (6th Cir. 1994). Here, the Escalade was a proper object of the HPD's community caretaking power because it was parked on private property at a Jumpin' Jack's Convenience Store. (Knight Depo., p. 18). The question is whether the HPD exceeded its authority by preventing Cansler's passenger, Kevin Banks, from driving the car home.

Before addressing that question, the Court notes that there is a disputed issue of fact. On the one hand, HPD officers testified that they had the car towed because Banks had only a learners' permit and thus was not qualified to drive the vehicle by himself. (Knight Depo., p. 27; Cates Depo., p. 51). According to Richard Cansler, however, the HPD refused to allow Banks to drive the Escalade because neither he nor Banks owned the vehicle. (Richard Cansler Depo., p. 27-28).

Ultimately, this dispute is immaterial. If Banks did not have a valid license, the HPD's refusal to let him drive the Escalade would unquestionably be permissible. See U.S. v. Harvey, 16 F.3d 109 (6th Cir. 1994) (impounding a vehicle in the absence of any licensed driver to attend to it is a legitimate exercise of community caretaking function). On the other hand, the HPD could also have reasonably refused to entrust Banks with the car simply because neither Cansler nor Banks owned the vehicle. See U.S. v. Smith, 522 F.3d 305 (3rd Cir. 2008) (finding impoundment reasonable under community caretaking function where neither driver nor passenger owned vehicle at issue); cf. U.S. v. Duguay, 93 F.3d 346 (7th

Cir. 1996) (concluding impoundment unreasonable where vehicle was owned by the driver and his girlfriend and brother were available to drive it away). Therefore, under either scenario, the HPD officers acted within their discretion in impounding the Escalade.

(b) Due Process

Plaintiffs also allege a Fifth Amendment due process violation as applied to the states via the Fourteenth Amendment. The guarantee of procedural due process assures that the deprivation of life, liberty, or property "be preceded by notice and opportunity for a hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1986); see also Lee v. W. Reserve Psychiatric Habilitation Ctr., 747 F.2d 1062, 1067 (6th Cir. 1984). In this case, the lawful Fourth Amendment seizure of the $9,173, and temporary impoundment of the Escalade pursuant to the HPD's community caretaking function, preclude Plaintiffs' due process challenge. Because Plaintiffs have failed to show that Defendants deprived them of a constitutionally protected interest in life, liberty, or property, the Court need not determine what process was due regarding such hypothetical loss. Thomas v. Cohen, 304 F.3d 563, (6th Cir. 2002); Johnston-Taylor v. Gannon, 907 F.2d 1577 (6th Cir. 1990).

Notwithstanding this finding, however, the Court notes that Plaintiffs have constitutionally-sufficient post-deprivation remedies available under the federal forfeiture statutes. See e.g., North Carolina ex rel Haywood v. Barrington, 256 F. Supp. 2d 452, 464 (M.D.N.C. 2003) (finding that neither the state nor federal actors violated Haywood's due process rights by seizing currency because "[a]dequate post-deprivation remedies were . . .

12

available" under the federal forfeiture statutes.); U.S. v. $16,942.25 U.S. Currency, 2007 WL 3237787, *2 (D. Me. 2007) ("The pending action for forfeiture is an appropriate post-deprivation process."); Nason v. U.S. Attorney's Office, 2007 WL 1170742, *7 (M.D. Tenn. 2007) (post-deprivation remedies available under 18 U.S.C. § 983); Bailey v. Patterson, 2006 WL 2642543 (D.S.C. 2006) (same). Indeed, Plaintiffs are currently participating in those proceedings. See Civil Docket for Case No. 3:06-cv-00125-RLY-WGH; (App. I). Thus, even if a Fourth Amendment violation had occured, Plaintiffs' due process rights would still be intact because adequate post-deprivation remedies were available.

(c) Equal Protection

Plaintiffs also contend that their rights under the equal protection clause of the Fourteenth Amendment were violated. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999); see also Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986). Here, Plaintiffs allege that "[a] substantial factor in Defendants taking and seizing the property of Plaintiffs was the color of Plaintiffs." (Amended Verified Complaint, Dkt. No. 18, ¶28). The record, however, fails to support that claim. According to Defendants, the reason they confiscated the currency was because the DEA informed them that it was drug money and asked them to seize it. (Knight Depo., p. 24, 53-57; Cates Depo., p. 13). Plaintiffs, for their part, have presented no evidence to the contrary. Richard Cansler has "no idea" whether his

13

race played a factor in his being pulled over. (Richard Cansler Depo., p. 80). Indeed, the only hint of discrimination in the record is Sylvia Cansler's belief that the property of African Americans is seized "all the time . . . in Henderson" because "[t]hey don't want no black person to have nothing around here." (Sylvia Cansler Depo., p. 71-73). Whatever the merits of Ms. Cansler's belief, it is no evidence that there was unconstitutional discrimination by Defendants in the case at bar. The Court must therefore grant Defendants' motion for summary judgment on the equal protection claim.

Having found no constitutional violation, the Court need not address qualified immunity.

### C. State Law Claims

#### 1. Kentucky Constitution

Plaintiffs next contend that their civil rights under Sections One and Ten of the Kentucky Constitution were violated. Ky. Const. §§ 1, 10. Both of these claims are readily dismissed. The former fails because Section One of the Kentucky Constitution (the Commonwealth's Bill of Rights), although enumerating certain liberties, "does not give way to a private cause of action." Allen v. Aramark Corp., 2007 WL 3120088, *3 (W.D. Ky. 2007); see also Taylor v. University Med. Ctr., Inc., 2005 WL 1026190, *3 (W.D. Ky. 2005). As for the latter, Plaintiffs claim under Section 10 of the Kentucky Consitution fails for the same reason as its federal counterpart discussed in Part IV.A.2(a) above. LaFollette v. Commonwealth, 915 S.W.2d 747, 748 (Ky. 1996) ("[Section 10] provides no greater protection than does the federal Fourth Amendment."); see also Jackson v. Herrington, 2008

WL 1897729, *3 (W.D. Ky. 2008).

    2. Common Law Torts

Plaintiffs also advance trespass, conversion, defamation, and false light claims. To recover on their trespass and conversion claims Plaintiffs would, as a threshold matter, have to show that the actions of the HPD were unlawful. Cf. Hickey v. Hayse, 188 F. Supp. 2d 722 (W.D. Ky. 2001) (no cause of action where police officer's trespass to realty was not "unlawful"). Here, because HPD acted fully in accordance with federal and state law, Plaintiffs' trespass and conversion claims must be dismissed.

Plaintiffs' defamation and false light claims also fail to withstand Defendants' motion for summary judgment. To state a prima facie case for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff, which is published, and which causes injury to his reputation. Gilliam v. Pikeville United Methodist Hosp. of Kentucky, Inc., 215 S.W.3d 56, 59 (Ky. Ct. App. 2006). Similarly, a false light claimant must show that the defendant portrayed him in a false light that is highly offensive to a reasonable person, and published that portrayal with actual malice. McCall v. Courier-Journal and Louisville Times Co., 623 S.W.2d 882, 888 (Ky. 1981).

In this case, Plaintiffs testified that Richard Cansler's name appeared in the Wall Street Journal or USA Today. (Richard Cansler Depo., p. 89-91; Sylvia Cansler Depo., p. 65-66). While the Canslers have failed to provide (or even specify) the allegedly defamatory document, the Court presumes that they refer to an advertisement required for federal forfeiture pursuant to 21 C.F.R. § 1316.75. If that is the case, Plaintiffs have failed to show

15

how that advertisement defamed rather than gave proper notice to Plaintiffs of the forfeiture proceeding. More importantly, however, Plaintiffs have presented no evidence that the Defendants were involved in the newspaper filing, let alone that they were responsible for any defamatory content or published the notice with actual malice. Accordingly, summary judgment for Defendants is appropriate because there is nothing upon which a reasonable jury could find in favor of Plaintiffs on their defamation and false light claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED** and the Plaintiffs' motion for summary judgment is **DENIED**. **IT IS SO ORDERED**.

cc: Counsel of Record